IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-01122-LTB-MJW

LOUIS MAYFIELD,

Petitioner,

v.

TIM HAND, et al.,

Respondents.

---

**RECOMMENDATION ON
AMENDED APPLICATION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241 (Docket No. 7)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to United States

Magistrate Judge issued by District Judge Lewis T. Babcock on August 10, 2007.

(Docket No. 10).

Now before the court for a report and recommendation is the pro se incarcerated

petitioner's Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. §

2241.[1]  Respondents filed a Return on Writ of Habeas Corpus (Docket No. 13), and

---

[1]The caption of his amended petition also states it is pursuant to 28 U.S.C. §
2254(d)(1) (Docket No. 7), but previously, in an Order Directing Applicant to File
Amended Application (Docket No. 6), Magistrate Judge Boyd N. Boland noted that in
the confusing original habeas corpus application, petitioner used the court-approved
form for filing an action pursuant to § 2254, which challenges the validity of his
conviction and sentence, to assert claims pursuant to § 2241.  Judge Boland found that
because petitioner "only asserts claims challenging the execution of his sentence, i.e.,
the decision by the Colorado Board of Parole to deny him parole, he will be directed to
use the proper form for pursuing a habeas corpus action pursuant to § 2241. . . ."

petitioner filed a Traverse (Docket No. 14).  The court has considered the Amended

Application, the Return, and the Traverse, as well as applicable statutes, Federal Rules

of Civil Procedure, and the court's file.  The court now being fully informed makes the

following findings, conclusions, and recommendation.

**Petitioner's Claims**

In his amended habeas application, the petitioner asserts that he "was denied the

right to a hearing . . . at a parole hearing," "was intentional[ly] deprived of both state &

federal liberty interest to due process of law," was "denied a fair hearing and an

opportunity to be heard," and "the hearing was held out of the existent [sic] of petitioner .

. . ." (Docket No. 7 at 2).  He claims:

> that parole hearings are some place else other than at the facility,
> because after talking to a lady on the T.V., in the medical department see,
> tape No #07-663; Dated 4-23-2007, upon petitioner leaving the room after
> the on the T.V. stated that could not grant or denied me a parole . . . my
> case manager Dale O'Conner told petitioner that his parole was denied in
> violation, and in conflict with C.R.S. 17-22.5-404(2); (3); (4); and the
> United States Constitution, petitioners fundamental rights to a fair
> procedure was deprived because of petitioners mental and physical
> handicap places petitioner at a great disadvantage to take part in state ran
> programs discriminate against handicap petitioners ability to work and pay
> restitution of a sum of $7,548.99, it's my beleave [sic] that I was singled
> out and denied Equal Protection that inmates that go before the Colorado
> Board of Parole are afforded to a hearing based on their ability to work,
> Colorado Revised Statutes conflict, with the United States Constitution. . .

(Docket No. 7 at 3).

Petitioner raises two specific habeas claims.  First, he asserts he was denied due

_____

(Docket No. 6 at 2).  While petitioner then filed an amended petition using the § 2241
form, in the caption he added that the petition was also pursuant to § 2254(d)(1).  In his
amended habeas application, petitioner is challenging only the execution of his
sentence and not the validity of his conviction and sentence.  Therefore, this court has
construed the application as being brought solely pursuant to § 2241.

process, claiming: "Petitioner was denied a parole hearing deprived of both state and federal created liberty interest right, denied fundamental rights to a fair procedure, and the opportunity to be heard. There is no state adequate means to redress constitutional deprivation of petitioners constitutional rights 'under the color of state law. . .'" (Docket No. 7 at 4). Second, he claims he was denied equal protection, asserting: "Petitioner was singled and denied the same right afforded other inmate in the same situation that are not both mental and physically handicap that can take part in state ran programs without being discriminated against because of such handicap. . ." (Docket No. 7 at 4). Petitioner seeks the following relief: "request a complete evidentiary hearing as soon as possible for deprivation of petitioners' 'civil rights . . . by the Colorado Board of Parole; petitioner request release under 28 U.S.C. § 2284, any and other relief this court deems just the laws, and United States Constitution." (Docket No. 7 at 9).

One of the attachments to the amended habeas application is a Notice of Colorado Parole Board Action dated April 23, 2007, in which a box is checked off reflecting the following decision: "DEFER TO: April 2008." (Docket No. 7 at 7). The reasons checked off for this determination are: "AGGRAVATING FACTORS/INADEQUATE TIME SERVED (Circumstances of Offense; Needs More Time," "PUBLIC RISK," and "DISCIPLINARY INFRACTION (Conduct in Correctional Facility)." (Docket No. 7 at 7). There are two signatures after the statement, "The undersigned hereby certify that all, but not limited to, parole guidelines set forth in C.R..S. 17-22.5-404(2), (3) and (4) were taken into consideration as per statute." (Docket No. 7 at 7).

**Respondents' Response**

Respondents assert the following in their Return.  First, the parole interview was conducted in accordance with the procedures prescribed by Colorado law.  They note that there is no federal constitutional right to parole, and there is similarly no provision in the Constitution, any federal statute, or precedent in this circuit which gives inmates a right to have a hearing prior to consideration of parole.  In addition, they assert there is no provision in federal law that entitles the inmate to any particular procedures when a state parole board decides to consider a parole application, and the procedures to be used are left to state law to prescribe.

According to respondents, in Colorado, parole interviews are not "hearings," nor are they subject to the Colorado Administrative Procedures Act.  The statute that governs the procedures merely states that one or more Board members shall conduct a parole "interview."  The statute provides:

> Whenever an inmate initially applies for parole, the board shall conduct an <u>interview</u> with the inmate.  At such interview at least <u>one member</u> of the board shall be present.  Any final action on an application shall not be required to be made in the presence of the inmate or parolee, and any such action shall require the concurrence of at least two members of the board.  When the two members do not concur, a third member shall review the record and, if deemed necessary, interview the applicant and cast the deciding vote.  Any subsequent application for parole shall be considered by the board in accordance with the provisions of section 17-2-201(4)(a).

§ 17-2-201(9)(a)(I), C.R.S. (emphasis added by respondents).  Furthermore, this statute sets no limits on what evidence Board members may consider and establishes no requirement for prior disclosure of "evidence" or information or prior notice of the interview date.  Instead, the statute merely provides that a Board member "meet" with the inmate, "interview" him, and "consider" his parole application.

In addition, respondents assert that there is no merit to the petitioner's claim that he was denied due process of law because the hearing was held out of his "existent" and that his rights were violated because "parole hearings are some place else other than at the facility, because after talking to a lady on the TV." They note that Colorado law allows for parole interviews to be conducted by video teleconferencing. § 17-2-201(10), C.R.S. ("The board shall interview all parole applicants at the institution or in the community in which the inmate is physically held or through teleconferencing as provided in subparagraph (II) of paragraph (d) of subsection (3) of this section. . . .").

Second, respondents assert that there was a rational basis for the decision to deny parole. They note petitioner's argument that he was deprived of a fair procedure because his mental and physical handicap places him at a great disadvantage to take part in the programs, but they point out that the Notice of Parole Board Action attached to his application indicates that he was not denied parole for failure to pay restitution or program participation. Rather, he was denied parole because of aggravating factors associated with his underlying criminal convictions, because he posed a public risk and a substantial parole risk, and because of the number of Code of Penal Discipline violations he received while incarcerated. Respondents then summarize petitioners current convictions,[2] note that he had numerous other criminal convictions that predate

---

[2]Respondents note:

The underlying summary of Mayfield's current convictions indicate that in Arapahoe case no. 96CR2822 Mayfield and his codefendants pushed their way into the victims [sic] home and assaulted him. Mayfield plead guilty to Conspiracy to Commit First Degree Burlgary and was sentenced to ISP for 6 years. However, ISP was revoked when Mayfield absconded to California. In Adams County case no 97CR2180, Mayfield's victim had

his current sentence, and assert that in light of his criminal history, the Board's exercise of its discretion cannot be said to have been irrational.  They note that the Parole Board concluded that petitioner needs to serve more time in prison before he is released.

Respondents also note that by statute the Board is not permitted to parole any offender unless "there is a strong and reasonable probability that the person will not thereafter violate the law . . . ." § 17-2-201(4)(a), C.R.S.  In this regard, the respondents point out that the petitioner scored "high" on the Risk Assessment Scale, noting that the Community Release Form associated with his parole indicates that he was regressed from a private prison due to management issues, had three or more prior prison or jail supervisions, had two prior probation supervisions or one or more community corrections supervisions, had one or more prior escapes from parole/probation custody, had one or more COPD convictions for every two years of incarceration, and had one or more probation revocations.  (Resps.' Ex. A, p. 5).  Respondents assert that these facts indicate that at the time of the interview, petitioner was not a good candidate for parole. Respondents also point out the that Board noted that the petitioner has received numerous prison disciplinary convictions, and at the time of his interview, he had accumulated 22 COPD convictions between November 2001 and January 2007. (Resps.' Ex. A. at 3, 6-7).  According to the respondents, the Board met with the

---

"knocked out the window to his wife's car.  Mayfield went into his house, retrieved a gun and shot his victim in the back.  He plead guilty to First Degree Assault with a Deadly Weapon and was sentenced to 12 years.  In Denver case no. 99CR470, Mayfield plead guilty to Second Degree Assault and was sentenced to 10 years concurrent to his other convictions.

(Docket No. 13 at 7).

petitioner, conducted an interview with him as part of the parole application hearing, considered the application, and recommended that the Board deny petitioner release on parole due to the above-stated reasons.  They assert that these reasons have absolutely nothing to do with petitioner's alleged physical or mental handicaps or his restitution.  Finally, respondents contend that petitioner fails to provide any factual assertions to support his equal protection claim that he was singled out and discriminated against because of his alleged mental and physical disabilities.

**Discussion**

This court's review of the Parole Board's decision is narrow.  Madson v. Ortiz, 2002 WL 1288696, *2 (10th Cir. June 12, 2002).  The court "reviews the Parole Board's action for abuse of discretion, asking whether the Board's action resulted in an abridgement of the petitioner's constitutional rights."  Id. (quoting Wildermuth v. Furlong, 147 F.3d 1234, 1236 (10th Cir. 1998)); Mulberry v. Neal, 96 F. Supp.2d 1149, 1150 (D. Colo. 2000) (Kane, S.D.J.).  "In reviewing the Board's decision, the inquiry is only whether there is a rational basis in the record for its conclusions embodied in its statement of reasons. . . .  So long as there was sufficient evidence before the Parole Board to support is decision, its actions are not an abuse of discretion."  Mulberry, 96 F. Supp.2d at 1151.

This court finds that the reasons stated in the Board's decision are sufficient, see Schuemann v. Colorado State Bd. of Adult Parole, 624 F.2d 172, 174 (10th Cir. 1980) ("It would be discordant to require unduly specific and detailed reasons from a Board vested with a subjective, predictive, and experimental function."), and that there is a rational basis in the record for the Board's conclusions embodied in its brief statement

of reasons. "The Colorado parole statute gives the Board broad discretion and does not require the granting of parole upon a showing of any particular facts. . . . The parole-release decision depends on an 'amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience. . . . It involves a 'discretionary assessment of a multiplicity of imponderables,' including but not necessarily limited to the nature of the crime(s) committed, **the amount of time served**, and the risk to society." Mulberry v. Neal, 96 F. Supp.2d at 1151 (emphasis added).

"[T]here is no federal constitutional right to parole." Id. (citing Greenholtz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 7 (1979)). Furthermore, "[a] state law only creates a federally protected liberty interest if it places substantive limitations on official discretion." Id. at 1152. In Colorado, the parole scheme created by state law gives the Board discretion to deny an inmate's request for parole. Therefore, the State has not created a constitutionally protected liberty interest, and petitioner is not entitled to due process protections. See id.

In any event, the statutory procedure was followed in petitioner's case. See 17-2-201(9)(a)(I); Mulberry v. Neal, 96 F. Supp.2d at 1152 n.3 (The law "only requires the Board member to meet, interview the inmate, and consider the application for parole."). In this case, petitioner was interviewed by a Board member, and two members of the Board agreed to defer his parole consideration until the following year. He was given a written explanation for the decision, and "[t]he explanation, though terse is sufficient." Mulberry v. Neal, 96 F. Supp.2d at 1152 n.3. The Board may consider a number of

factors when reaching its discretionary decision to grant or deny parole.  <u>See</u>

<u>Schuemann</u>, 624 F.2d at 174 ("In making predictive appraisals, parole boards should

have available to them a wide panoply of information concerning the parole applicant. . .

.  In a federal parole setting, this court has approved parole board consideration of an

overturned conviction as long as the reversal was not based on a finding of innocence. .

. .").  Petitioner has made no showing that the Board has considered incorrect or

inaccurate information.  Furthermore, Colorado law allows for parole interviews to be

conducted by video teleconferencing. § 17-2-201(10), C.R.S.

     Finally, respondents correctly assert that the plaintiff has failed to state an equal

protection claim.  "The Equal Protection Clause requires the government to treat

similarly situated people alike. . . .  In order to assert a viable equal protection claim,

[petitioner] must first make a threshold showing that [he was] treated differently from

others who were similarly situated to [him]."  <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1312

(10th Cir. 1998).  Petitioner has not done so here.

     **WHEREFORE,** for the foregoing reasons, it is hereby

     **RECOMMENDED** that the  (Docket No. 7) be **denied and dismissed**.

     **NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the**

**parties have ten (10) days after service of this recommendation to serve and file**

**written, specific objections to the above recommendation with the District Judge**

**assigned to the case.  The District Judge need not consider frivolous, conclusive,**

**or general objections.  A party's failure to file and serve such written, specific**

**objections waives _de novo_ review of the recommendation by the District Judge,**

**Thomas v. Arn**, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  **Makin v. Colorado Dep't of Corrections**, 183 F.3d 1205, 1210 (10th Cir. 1999); **Talley v. Hesse**, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

Date:  June 17, 2008                          s/ Michael J. Watanabe
       Denver, Colorado                    Michael J. Watanabe
                                                United States Magistrate Judge